## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

In Re: FRANK and DAWN HACKLER,

*Debtors*

FRANK J. HACKLER and DAWN A. STELZE-HACKLER,

*Plaintiffs-Appellees,*

v.

ARIANNA HOLDING COMPANY, LLC.,

*Defendant-Appellant,*

Civil Action No.: 17-cv-6589 (PGS)

**MEMORANDUM AND ORDER**

Appellant Arianna Holding Company (hereinafter, "Arianna") appeals an order by Bankruptcy Court Judge Christine M. Gravelle. (ECF No. 4). On August 28, 2017, Judge Gravelle granted Plaintiff-Debtors Frank and Dawn Stelze-Hackler's (hereinafter, "Debtors") motion for summary judgment; declared the Final Judgment Foreclosure null and void, under 11 U.S.C. § 547(b); and ordered that Debtors' property be returned to them. (ECF. No. 1-2 at 2). The Court affirms the decision of the Bankruptcy Court for the reasons set forth herein.

### BACKGROUND

The Court adopts the facts as set forth in the Bankruptcy Court's August 28, 2017 opinion. *See In re Hackler*, 2017 Bankr. LEXIS 2437 (Bankr. D.N.J. Aug. 28, 2017). Debtors owned real property as tenants by the entireties in North Brunswick, New Jersey (the "Property"). *Id.* at *2. On June 25, 2013, the Township of North Brunswick held a tax sale on the property for unpaid municipal liens. *Id.* The tax sale certificate was sold to Phoenix Funding, Inc., which paid a

1

premium of $13,500 for the right to purchase the tax sale certificate and continued to pay Debtor's delinquent taxes, charging an interest rate of 18%. *Id.* After sending a notice to foreclose to Debtors, Phoenix assigned its tax sale certificate to Arianna on May 9, 2016. *Id.*

On June 17, 2016, Debtors filed for Chapter 13 bankruptcy, which was later dismissed on September 9, 2016 due to Debtor's failure to attend a Section 341(a) meeting and make all required pre-confirmation payments to the trustee. (Bankruptcy Docket 8 ¶ 13). A month later, after Debtors failed to timely redeem the tax sale certificate, a Final Judgment in the Foreclosure was entered on October 6, 2016, which vested Arianna with title to the property. (*Id.* at ¶¶ 14, 16).

Less than three months later, on December 14, 2016, Debtors again filed for Chapter 13 bankruptcy. *In re Hackler*, 2017 Bankr. LEXIS 2437, at *2-3. As part of their bankruptcy petition, Debtors included their Property, valued at $335,000, and identified Arianna's lien as worth $45,000. *Id.* Debtors identified approximately $89,000 of additional judgment liens against the Property. *Id.* That same day, Debtors also filed an adversary proceeding complaint against Arianna, seeking to avoid the October 6, 2016 transfer of the Property to Arianna. Specifically, Debtors sought relief, contending that the transfer constituted a constructively fraudulent transfer under 11 U.S.C. § 548 or an avoidable preference under 11 U.S.C. § 547(b).

In her August 28, 2017 written opinion, Judge Gravelle granted Debtors' motion for summary judgment and voided the October 2016 Property transfer under 11 U.S.C. § 547(b). Judge Gravelle first addressed Arianna's federalism argument, which focused on a potential conflict between voiding property transfers under Section 547 and "the stability of title to real property." *Id.* at *5-6. The Bankruptcy Court began by discussing at length the Supreme Court's decision in *BFP v. Resolution Trust Corporation*, 511 U.S. 531, 546-47 (1994), which Arianna relies heavily on. *Id.* at *5-8. Because *BFP* was limited to setting aside fraudulent transfer of

2

mortgage foreclosures under 11 U.S.C. § 548, Judge Gravelle concluded that *BFP*'s holding was inapplicable for the present motion, which implicated Section 547(b). *Id.* at *8.

The Bankruptcy Court also discussed the substance of Debtors' Section 547(b) claim and the five elements necessary to support such a claim. *Id.* at *11-12. Section 547(b) allows a debtor to set aside the transfer of property if the transfer was:

> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
>> (A) on or within 90 days before the date of the filing of the petition; or
>> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if—
>> (A) the case were a case under chapter 7

11 U.S.C. § 547(b). Specifically, regarding Section 547(b)(5), the Bankruptcy Court found that allowing the Property transfer would entitle Arianna to a far greater amount than it would otherwise receive under Chapter 7:

> In the present matter it is not in controversy that the valuation of the Property, estimated at $335,000, far exceeds the value of Arianna's lien, estimated at $45,000. There are no mortgage liens on the Property, although Debtors have unsecured debt. It cannot be reasonably argued that a Chapter 7 trustee would not be able to secure a higher price for the Property than the amount of the Arianna lien. Liquidation in this case would pay the Arianna lien in full and produce significant assets for distribution to creditors. It cannot be reasonably argued that Arianna, in receiving a $335,000 property, has not received more than the approximately $45,000 it would have received in a Chapter 7 bankruptcy.

*In re Hackler*, 2017 Bankr. LEXIS 2437, at *11. Finally, Judge Gravelle concluded that "Arianna's arguments regarding federalism are overstated when applied to a § 547 preferential transfer." *Id.* at *12. The Bankruptcy Court noted that although New Jersey law exempts tax foreclosures from reach of its fraudulent conveyance statute, N.J.S.A. § 54:5-87, it is silent on the effect of preferential transfers set forth in the Bankruptcy Code. *Id.* More significantly, the

3

Bankruptcy Court concluded that "[a]llowing avoidance of a transfer of property made pursuant to the entry of judgment on a tax sale foreclosure is . . . []consistent with state law." *Id.* In support of this conclusion, Judge Gravelle pointed to N.J.S.A. § 54:5-87, which provides a similar ninety day period, from the entry of the tax sale foreclosure, to challenge the judgment. *Id.* at *13. Therefore, after determining that the avoidance of the transfer of property comports with New Jersey law, the Bankruptcy Court held that Plaintiff satisfied all the necessary elements under Section 547 and, therefore, declared void the October 2016 Property Transfer. *Id.*

On appeal, Arianna presents the following arguments: (1) the Bankruptcy Court's decision runs afoul of the Supreme Court's decision in *BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994); and (2) the Bankruptcy Court erred in failing to consider whether Section 547(b) violates the Tax Injunction Act. Debtors oppose Arianna's appeal and request the Court affirm the Bankruptcy Court's decision.

## LEGAL STANDARD

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1). A bankruptcy court's legal conclusions "are subject to the district court's plenary review." *J.P. Fyfe, Inc. v. Bradco Supply Corp.*, 891 F.2d 66, 69 (3d Cir. 1989). As such, we review de novo a bankruptcy court's order granting summary judgment. *In re AE Liquidation, Inc.*, 866 F.3d 515, 522 (3d Cir. 2017) (citing *In re Global Indus. Techs., Inc.*, 645 F.3d 201, 209 (3d Cir. 2011)). However, a bankruptcy court's factual findings are reviewed under a "clearly erroneous" standard of review, which will only be set aside "when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re CellNet Data Sys., Inc.*, 327 F.3d 242, 244 (3d Cir. 2003) (citations omitted). If a decision involves mixed questions of law and fact, the Court utilizes a mixed standard of review. We accept the trial court's finding

of historical or narrative facts unless clearly erroneous, but exercise "plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts." *Mellon Bank, N.A. v. Metro Commc'ns, Inc.*, 945 F.2d 635, 642 (3d Cir. 1991) (citations omitted). Additionally, a bankruptcy court's exercise of discretion is reviewed by this Court using an abuse of discretion standard. *Kool, Mann, Coffee & Co. v. Coffey*, 300 F.3d 340, 353 (3d Cir. 2002).

**ANALYSIS**

## I. The Bankruptcy Did Not Err in Its Analysis of *BFP*

Arianna contends that the Bankruptcy Court erred in concluding that the Supreme Court's holding in *BFP* had no application to its Section 547(b) analysis. According to Arianna, because there is an established state interest in the stability of titles to real estate, avoidance of a preferential transfer pursuant Section 547(b) creates significant federalism concerns identified in *BFP*. Debtors respond, arguing that *BFP* is inapplicable for the present appeal.

In *BFP*, Justice Scalia, writing on behalf of the majority, considered whether a debtor could set aside a mortgage foreclosure sale as a fraudulent transfer under 11 U.S.C. § 548(a), since the price was not the reasonable equivalent value. *See* 511 U.S. at 533-34. Justice Scalia noted that Section 548 allows a debtor or trustee to set aside transfers that are "infected by actual fraud" or "constructively fraudulent." *Id.* at 535. Such transfers may be avoided if the trustee can show: (1) the debtor had an interest in the property; (2) the transfer occurred within one year of filing for bankruptcy; (3) the debtor was insolvent at the time of the filing; and (4) the debtor received "less than a reasonably equivalent value in exchange for such transfer." *Id.* (quoting 11 U.S.C. § 548(a)(2)(A)). The facts before the Supreme Court showed that Imperial, a mortgagee, instituted foreclosure proceedings and the property was sold for $433,000, but the actual value exceeded

$725,000. *Id.* at 534. In reviewing the transaction, the bankruptcy court upheld the foreclosure sale because it was consistent with California law and was "neither collusive nor fraudulent." *Id..* Other courts had used the reasonably equivalent value as a benchmark to determine whether a foreclosure sale was non-collusive, and would simply avoid such a transfer if it did not meet a substantial percentage of that value.

Justice Scalia agreed with the bankruptcy court, noting that a forced foreclosure sale is far different from a sale in a more relaxed open market condition; as such, a forced foreclosure sale "constitutes a reasonably equivalent value." *Id.* at 537-39. Therefore, the majority held that so long as the bankruptcy decision is consistent with the requirements of state law, it will be deemed enforceable. *See id.* at 545.

*BFP* is distinguishable from this case for several reasons. First, *BFP* discussed fraudulent transfers under Section 548 and the underlying federalism issues that arise when a federal court sets aside a long observed state remedy of foreclosure. Here, a different section of the Bankruptcy Code, Section 547(b), is at issue. The distinction between the two sections is significant when one compares the provisions. Unlike Section 548, Section 547(b) is concerned that a single creditor, based on a preferential transfer, may be granted a far better remedy than other creditors. Hence, a transfer of an interest may be avoided if the transfer is:

> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made –
> > (A) on or within 90 days before the date of the filing of the petition; or
> > (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if—
> > (A) the case were a transfer under chapter 7.

*In re Friedman's, Inc.*, 738 F. 3d 547, 550 (3d Cir. 2013) (quoting 11 U.S.C. § 547(b)). As such, Justice Scalia's concern that established state foreclosure laws may be undermined by conflicting federal law is not at issue here. *See In re GGI Props.*, LLC, 568 B.R. 231, 254-55 (Bankr. D.N.J. 2017); *see also In re Rambo*, 297 B.R. 418, 432 (Bankr. E.D. Pa. 2003)  .

Moreover, in New Jersey, there are significant procedural differences between a mortgage foreclosure and a tax sale certificate foreclosure. "In a mortgage foreclosure, the judgment directs the property to be sold and the sale occurs after the judgment. In a tax sale certificate foreclosure, the certificate is sold and then after a two-year waiting period, the certificate holder can obtain a foreclosure judgment which vests title directly in the holder without further sale." *In re McGrath*, 170 B.R. 78, 81 (Bankr. D.N.J. 1994). In *In re Berley Associates*, 492 B.R. 433 (Bankr. D.N.J. 2013), the bankruptcy court considered this distinction in determining whether *BFP* barred the plaintiff's efforts to avoid transfer of title, in a pre-petition tax sale certificate foreclosure context, based on 11 U.S.C. § 548(a)(1)(B) and 11 U.S.C. § 547(b). *Id.* at 434. Judge Kaplan explained:

> [I]n a mortgage foreclosure action, competitive bidding for the underlying property is encouraged by means of advertising and public auction. As a result, a value for the property may be inferred. By contrast, with regard to tax sales [certificate], public bidding occurs at the inception of the process, within months after the delinquency, and is limited to the rate of interest on the unpaid taxes (which amounts have little connection to the value of the property). Similarly, the fixed redemption amount at the time of foreclosure of the tax sale certificate is calculated from the accrued taxes and interest thereon, not the value of the underlying property.

*Id.* at 439. As such, the bankruptcy court found *BFP* inapplicable in the tax sale certificate foreclosure context, since New Jersey tax sale certificate foreclosures are "strict foreclosures," which do not result in a public sale, but a "straight transfer of title." *Id.* at 411 (citing *Caput Mortuum, L.L.C. v. S&S Crown Servs.*, 841 A.2d 430, 438 (N.J. Super. Ct. App. Div. 2004)).

For the sake of completion, it is worth also briefly noting that the Court is satisfied that the Bankruptcy Court properly determined that Debtors met all five factors under Section 547. Here, it is undisputed that: (1) Debtor's property was transferred to Arianna; (2) the transfer was for delinquent municipal tax sale certificate liens owed by the Debtors before the transfer was made; (3) Debtors were insolvent at the time; (4) the transfer was made within 90 days of the Debtors' bankruptcy filing; and (5) the creditor received substantially more proceeds ($330,000) than it would have received under Chapter 7 ($45,000 plus interest). "Section 547(b)(5)'s requirement that the creditor not receive more by a prepetition transfer than it would under chapter 7 'simply carries out the common sense notion that a creditor need not return a sum received from the debtor prior to bankruptcy if the creditor is no better off vis-a-vis the other creditors of the bankruptcy estate than he or she would have been had the creditor waited for liquidation and distribution of the assets of the estate.'" *In re GGI Props., LLC*, 568 B.R. at 255 (quoting Collier on Bankruptcy, ¶ 547.03 (Matthew Bender 2017)); *see also In re Rocco*, 255 F. App'x 638, 642 (3d Cir. 2007). The Court also sees no prejudice to Arianna, since it nevertheless remains entitled to the initial lien (including 18% interest) it secured against Debtors. *See In re Andrews*, 262 B.R. 299, 306 (Bankr. M.D. Pa. 2001).

Finally, the Court is unpersuaded by Arianna's argument that the bankruptcy court's decision is incongruent with New Jersey law. As the Bankruptcy Court noted, New Jersey has a similar statute, under N.J.S.A. § 54:5-87, which provides limited grounds for debtors to contest the validity of a final judgment, within ninety days. Arianna's reliance on case-law that refused to set aside tax foreclosures based on equitable principles or N.J. Ct. R. 4:50-1 is unavailing. None of the matters relied by Arianna were based on Section 547(b), nor do they identify any conflict

between the Bankruptcy Code and New Jersey law. In short, having reviewed the record, the federalism issues of *BPF* are not present in this case.[1]

## II. Section 547(b) Does Not Violate the Tax Injunction Act

Arianna argues, alternatively, that the Bankruptcy Court erred in failing to determine that Section 547(b) violates the Tax Injunction Act, 28 U.S.C. § 1341. According to Arianna, the Tax Injunction Act completely barred the Bankruptcy Court from hearing Debtor's cause of action. The Court disagrees.

The Tax Injunction Act states, "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. However, because a tax sale certificate does not interfere with a state's ability to collect taxes, the Tax Injunction Act is inapplicable. *See Simon v. Cebrick*, 53 F.3d 17 (3d Cir. 1995). In *Simon*, the tax lienholder brought a foreclosure action against the debtors in state court; in challenging removal to federal court she contended that the FDIC's invocation of 12 U.S.C. § 1825(b)(2) "restrained the collection of taxes

---

[1] At oral argument, Arianna presented a newly minted argument that was not raised in its brief or before the Bankruptcy Court. Counsel averred, without any legal support, that because Debtors' initial June 2016 Chapter 13 filing was dismissed for failing to attend a Section 341(a) meeting, that this somehow precludes Debtors from now availing themselves of relief under Section 547(b). While the Court notes that Debtors failed to attend its Section 341(a) meeting, which resulted in a dismissal of the petition; the Bankruptcy Court allowed Plaintiffs to refile their bankruptcy petition six months later. However, given the general rule that bankruptcy courts construe the record in the debtors' favor; the Court does not see this argument as a reason for remand. In addition, "when a party fails to raise an issue in the bankruptcy court, the issue is waived and may not be considered by the district court on appeal." *In re Kaiser Group Int'l Inc.*, 399 F.3d 558, 565 (3d Cir. 2005); *In re Ginther Trusts*, 238 F.3d 686, 689 (5th Cir. 2001). Finally, as a matter of procedural fairness, courts decline to consider "newly minted arguments" raised for the first time at oral argument. *Millipore Corp. v. W.L. Gore & Assocs.*, No. 11-1453, 130206, at *27-28 (D.N.J. Nov. 9, 2011) (citing *Dana Transp., Inc. v. Ableco Fin., LLC*, No. 04-2781, 2005 U.S. Dist. LEXIS 18086, at *16 (D.N.J. Aug. 17, 2005)). For these reasons, Arianna's argument is denied.

and thus implicated the jurisdictional bar of the [Tax Injunction Act]." *Id.* at 23. In rejecting this argument, the Third Circuit explained:

> Withholding consent to foreclose from a private citizen does not implicate the assessment, levy, or collection of any tax. The statute is intended to prevent interference with taxation by governmental entities; however, upon the sale of the tax certificate, the tax obligation is satisfied. The holder's inability to foreclose does not affect the governmental entity's ability to assess, levy, or collect any tax, and thus, the [Tax Injunction Act] is not applicable

*Id.* Consistent with *Simon*, the Court finds that the Tax Injunction Act is not implicated here. It is undisputed that Arianna's predecessor purchased the tax certificate from the Township of North Brunswick; thereby satisfying the tax obligation. The fact that the Bankruptcy Court has avoided the transfer of title to Arianna does not affect the Township of North Brunswick's ability to still collect taxes. *See In re Thomas*, 497 B.R. 188, 199 (Bankr. E.D. Pa. 2013) ("Any restraint on [the lienholder's] right to prosecute the Sheriff Sale Petition that might be imposed by the bankruptcy court in this adversary proceeding would not affect the taxing authority's (i.e., the City's) ability to assess, levy or collect a tax"). Therefore, the Court is satisfied that the Tax Injunction Act does not apply.

Finally, Arianna's argument that Section 505 of the Bankruptcy Code, 11 U.S.C. § 505, bars the Bankruptcy Court from reviewing a final judgment is without merit. Section 505 concerns the determination of tax liability, which is not at issue. Since Section 505 has no applicability in the present matter, the Court sees no error in the Bankruptcy Court's judgment.

## ORDER

Having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented, and for good cause shown, and for all of the foregoing reasons,

IT IS on this 22nd day of March, 2018,

**ORDERED** that the Bankruptcy Court's decision is **AFFIRMED**.

PETER G. SHERIDAN, U.S.D.J.